**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JASON NASH,<br><br>**Plaintiff,**<br><br>v.<br><br>GODADDY.COM LLC,<br><br>**Defendant.** | **CIVIL NO.** 26-1242 (RAM) |

**OPINION AND ORDER**[1]

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant GoDaddy.com LLC's, ("Defendant" or GoDaddy.com) *Motion to Dismiss*. (Docket No. 15). Having considered the parties' submissions in support of and in opposition, the Court **GRANTS IN PART** Defendant's *Motion to Dismiss* at Docket No. 15 and **ORDERS** Plaintiff Jason Nash ("Plaintiff" or "Nash") to arbitrate his claims against GoDaddy.com. Given that all of the parties' claims are subject to arbitration, this action is **STAYED** pending arbitration.

## I. BACKGROUND

On April 24, 2026, Plaintiff filed a *pro se Complaint* against Godaddy.com. (Docket No. 1). Plaintiff averred that he registered

[1] Luis M. Julia, a third-year law student, assisted in the preparation of this Opinion and Order.

and managed three domain names through his GoDaddy.com account, namely CaribbeancustomCellars.com, PanachWineCellars.com, and ReplacementPoolCovers.com. Id. ¶ 9. In essence, Plaintiff alleges that: (1) Defendant transferred CaribbeanCustomCellars.com in name only but continued to issue renewal notices for months after, evincing deficiencies in GoDaddy.com's ownership and transfer records; (2) Defendant transferred PanacheWineCellars.com's domain and associated business email account without Plaintiff's authorization; and (3) Defendant sold the domain for ReplacementPoolCovers.com without Plaintiff's authorization. Id. ¶¶ 10-13. Plaintiff further argued that despite his repeated calls and requests for assistance, Defendant was unable or unwilling to remedy the harm caused to him. Id. ¶¶ 14-15. In light of the above, Plaintiff filed claims for negligence, breach of contract, breach of implied covenant of good faith and fair dealing, conversion, tortious interference, replevin, and declaratory relief. Id. ¶¶ 20-27. Notably, Plaintiff avers in his *Complaint* that he previously initiated an arbitration proceeding as required by GoDaddy.com's Terms of Service but that it was closed when Defendant failed to pay its share of administrative and arbitrator compensation deposits. Id. ¶ 3.

Defendant filed a *Motion to Dismiss* on June 12, 2026, contending that in light of a binding arbitration clause in

GoDaddy.com's Universal Terms of Service Agreement ("UTOS"), the Court should compel Plaintiff to arbitration.[2] (Docket No. 15). Defendant posits that although Plaintiff previously initiated an arbitration proceeding as required by the UTOS, Plaintiff used the incorrect address and email address to adequately notify GoDaddy.com of the arbitration. Id. at 10.

On July 1, 2026, Plaintiff filed an *Opposition*. (Docket No. 20). Therin, Nash argues that he already complied with the parties' agreed arbitration process before commencing the present action but concedes that no determination on the merits was ever made. Id. at 7. Plaintiff further argues that Defendant currently seeks relief outside of the scope of the Federal Arbitration Act. Id. at 8-9. In the alternative, Plaintiff contends that if arbitration is compelled, the case should be stayed rather than dismissed. Id. at 9.

GoDaddy.com filed a reply on July 14, 2026, asserting that Plaintiff's claims fall squarely within the terms of the arbitration agreement given that the UTOS provides that any dispute, save for trade secret misappropriation, patent infringement, copyright infringement or trademark infringement, shall be subject to arbitration. (Docket No. 24 ¶ 8). Nevertheless,

[2] The Court notes that Defendant also raised an argument regarding ineffective service of summons but that all insufficiencies have since been addressed and remediated.

GoDaddy.com agrees that stay pending arbitration, rather than dismissal, is proper. Id. ¶ 9.

## II. APPLICABLE LAW

Under First Circuit precedent, "[i]n deciding a motion to compel arbitration, a court must ascertain whether: '(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.'" Gove v. Career Sys. Dev. Corp., 689 F. 3d 1, 4 (1st Cir. 2012) (quoting Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008)). If these factors are met, the court must enforce the arbitration agreement in accordance with its precise terms. *See* AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 343-344 (2011).

Section 2 of the Federal Arbitration Act ("FAA") provides:

> **A written provision** in any maritime transaction or **a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction**, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, **shall be valid, irrevocable and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract**[.]

9 U.S.C. § 2 (emphasis added). The United States Supreme Court has stated that this statute "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Therefore, section 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Id. at 24-25.

Given the liberal federal policy favoring arbitration agreements established by the FAA, "**as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration**, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. at 25-26 (emphasis added). Indeed, it is well-settled that questions of arbitrability must be handled with a high regard for the federal policy in favor of arbitration, and any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration. *See* Colón de Sánchez v. Morgan Stanley Dean Witter, 376 F. Supp. 2d 132, 135 (D.P.R. 2005); Carro v. Parade of Toys, Inc., 950 F. Supp. 449, 451-52 (D.P.R. 1996); Cardona Tirado v. Shearson Lehman Am. Exp., Inc., 634 F. Supp. 158, 159 (D.P.R.

1986).

Section 4 of the FAA "instructs courts determining whether to compel arbitration to 'hear the parties,' which 'appears to contemplate the submission and consideration of evidentiary materials -- including materials beyond those attached to the pleadings -- in support of and opposition to a motion to compel arbitration under the FAA.'" Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc., 43 F.4th 150, 168 (1st Cir. 2022)(quoting Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 175 (1st Cir. 2021)). Accordingly, the First Circuit has determined that courts must apply the summary judgment standard when evaluating a request to compel arbitration, which evaluates the evidentiary supportability of claims, rather than the motion to dismiss standard. Id. "Pursuant to the summary judgment standard, the court must construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Air-Con, Inc., 21 F.4th at 175. "If the non-moving party puts forward materials that create a genuine issue of fact about a dispute's arbitrability, the district court 'shall proceed summarily' to trial to resolve that question." Id. (quoting 9 U.S.C. § 4); *but see* Soto v. State Indus. Prods., Inc., 642 F.3d 67, 72 n. 2 (1st Cir. 2011) (quoting Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002) (finding that a party cannot avoid

compelled arbitration "by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial.").

## III. ANALYSIS

### A. A written agreement to arbitrate exists

Section 2 of the Federal Arbitration Act provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable…

9 U.S.C. § 2.

Per the arbitration clause in the UTOS, the parties agree "to arbitrate all Disputes that are not resolved through the Informal Dispute Resolution Process." (Docket No. 15-2 at 30, § 25(D)). The UTOS defines a "Dispute" as meaning:

> [A]ny dispute, disagreement, claim, controversy or action between you and GoDaddy (each a "Party" or together the "Parties") that arises from or is in related in any way to this Site or the Services, this Agreement (including any alleged reach of this Agreement), any transaction involving you and GoDaddy, or our relationship with you, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute

> regulation, ordinance, or any other legal, common law, or equitable basis, and shall be interpreted to be given the broadest meaning allowable under the law. YOU AND GODADDY AGREE THAT DISPUTE AS DEFINED IN THIS AGREEMENT SHALL NOT INCLUDE ANY CLAIM OR CAUSE OF ACTION BY YOU OR GODADDY FOR (I) TRADE SECRET MISAPPROPRIATION, (II) PATENT INFRINGEMENT, (III) COPYRIGHT INFRINGEMENT OR MISUSE, OR (IV) TRADEMARK INFRINGEMENT OR DILUTION.

(Docket No. 15-2 at 29, § 25(A)) (capitalization in the original). The arbitration clause further provides that "[a]ny Dispute that is not resolved informally ... shall be exclusively resolved through binding individual arbitration by the American Arbitration Association ('AAA') under its Commercial Arbitration Rules (the 'AAA Rules')[.]" (Docket No. 15-2 at 31, § 25(E)).

Plaintiff does not dispute that he entered the UTOS nor does he contend that the agreement is null. Likewise, there is no controversy over the validity of the arbitration agreement. Defendant noted, and Plaintiff does not counter, that the UTOS is a "clickwrap agreement" where the user must click on a box to accept the terms before the purchase of the service can be completed and that Plaintiff accepted. (Docket No. 15, at 10-11).

The First Circuit has held that "[d]ue to their similarity to traditional written contracts, clickwrap contracts usually create equivalent contractual obligations." Toth v. Everly Well, Inc., 118 F.4th 403, 411 (1st Cir. 2024) (citing 1 Corbin on Contracts § 2.12 (2023)) ("From a contract law perspective, there is little

controversy surrounding clickwrap agreements. They are generally akin to signing a traditional pen and ink contract.”). Specifically, “requiring users to signal their agreement by clicking a checkbox puts the user on notice that the user is entering into a contractual arrangement, satisfying the notice prong, and requires an expressly affirmative action, satisfying the assent prong.” Toth v. Everly Well, Inc., 118 F.4th 403, 411 (1st Cir. 2024) (cleaned up) (quotations omitted).

Therefore, per the clear text of the UTOS, a written agreement to arbitrate exists between Nash and GoDaddy.com.

**B. Whether Plaintiff’s claims fall within the scope of the arbitration agreement must be determined by the arbitrator**

As noted above, the UTOS contains an explicitly broad definition of what constitutes an arbitrable dispute. *See* (Docket No. 15-2 at 29, § 25(A)). Furthermore, the arbitration clause provides that issues including but not limited to “jurisdictional and **arbitrability issues**, issues related to the formation, existence, validity, enforceability, interpretation, or scope of this Agreement, and any issue of the proper parties to this Agreement; or whether either Party is in breach or default of this Dispute Resolution Section 25 or has waived the right to arbitrate” are “**exclusively for the Arbitrator to decide.**” (Docket No. 15-2 at 31; § 25(E)) (emphasis added).

The Supreme Court has held that:

> When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 68 (2019). Accordingly, "whenever parties form a valid and enforceable delegation agreement, the FAA compels courts to send the entire action to arbitration." Toth, 118 F.4th at 410 (citations omitted).

In the case at bar, Plaintiff contends that Defendant requests substantially broader relief beyond what is authorized by the FAA, including the enforcement of the delegation provision and determinations concerning the legal effect and enforceability of various provisions of the UTOS. (Docket No. 20 at 9). However, per the terms of the UTOS, controversies regarding arbitrability must be delegated to an arbitrator. (Docket No. 15-2 at 31; § 25(E)). Thus, the Court "'must respect the parties' decision as embodied in the contract" and send the issue to the arbitrator to decide. Bosse v. New York Life Ins. Co., 992 F.3d 20, 27 (1st Cir. 2021) (quoting Henry Schein, 586 U.S. at 71).

**C. Defendant has not waived its right to arbitrate**

Plaintiff does not contend that Defendant waived his right to arbitration. He has, however, alleged that Defendant did not

properly acknowledge the initial arbitration process that Plaintiff initiated. Therefore, the issue is worth examining.

The First Circuit has repeatedly recognized that a party may implicitly waive its contractual right to arbitrate by engaging in litigation, but that "[w]aiver is not to be lightly inferred, and mere delay in seeking [arbitration] without some resultant prejudice to a party cannot carry the day." Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001) (citation omitted). In assessing whether a party implicitly waived their right to arbitration, federal courts traditionally take into consideration whether:

> (1) whether the parties participated in a lawsuit or took other action inconsistent with arbitration; (2) whether the litigation machinery has been substantially invoked and the parties [are] well into preparation of a lawsuit by the time an intention to arbitrate [is] communicated; (3) whether there has been a long delay and trial is near at hand; (4) whether the party seeking to compel arbitration has invoked the jurisdiction of the court by filing a counterclaim; (5) whether discovery not available in arbitration has occurred; and, (6) whether the party asserting waiver has suffered prejudice.

FPE Found. v. Cohen, 801 F.3d 25, 29 (1st Cir. 2015) (internal quotations omitted); *but see* Morgan v. Sundance, Inc., 596 U.S. 411, 412, 142 S. Ct. 1708, 1709, 212 L. Ed. 2d 753 (2022) (holding that "Section 6 instructs that prejudice is not a condition of

finding that a party waived its right to stay litigation or compel arbitration under the FAA.”).

The First Circuit has ruled that a defendant waives their right to arbitration where the plaintiff previously sought to invoke arbitration and the defendant explicitly declined to honor the agreement. Menorah Ins. Co. v. INX Reinsurance Corp., 72 F.3d 218 (1st Cir. 1995). However, that is not what occurred here. Plaintiff alleges that he initially incorrectly notified Defendant of arbitration but promptly corrected the mistake. Defendant argues that both notices were insufficient and thus GoDaddy.com was never made aware of the arbitration. GoDaddy.com’s failure to appear at the initial arbitration proceeding due to lack of adequate notice does not amount to an explicit decline to honor the arbitration clause. Moreover, there are no allegations nor evidence on the record that Defendant took any other action inconsistent with arbitration. Instead, Defendant invoked the arbitration clause in the very initial stages of the pending litigation. For these reasons, the Court concludes that GoDaddy.com has not waived its right to arbitration. Given that: (1) a valid written agreement to arbitrate exists; (2) the parties agree to delegate questions of arbitrability to the arbitrator; and (3) Defendant did not waive its right to arbitration, the Court must compel arbitration.

**D. Stay pending arbitration is proper**

The remaining question before the Court is whether the pending litigation should be stayed or dismissed during arbitration. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties **stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement**, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). In other words, once a party adequately demonstrates that the claims pending before the court are subject to arbitration pursuant to a valid, written arbitration agreement, the FAA directs the court to stay the proceedings pending the completion of the arbitration. Id.

The Supreme Court recently addressed the question of whether dismissal or stay is proper when arbitration is compelled. Analyzing Section 3 of the FAA, the Court concluded that "the text, structure, and purpose all point to the same conclusion[,]" namely that "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion

to dismiss the suit on the basis that all the claims are subject to arbitration." Smith v. Spizzirri, 601 U.S. 472, 475 (2024). Instead, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." Id. at 478.

In the case at bar, Plaintiff has requested that the case be stayed, rather than dismissed, pending arbitration. (Docket No. 20 at 9). Defendant also concedes that a stay is proper pursuant to Spizzirri. Accordingly, the present action is hereby **STAYED** pending arbitration.

## IV. CONCLUSION

"[W]here the parties have agreed to arbitrate, the FAA requires 'courts [to] rigorously enforce arbitration agreements according to their terms.'" Bosse v. New York Life Ins. Co., 992 F.3d 20, 27 (1st Cir. 2021) (quoting Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (internal quotations omitted). For the foregoing reasons, the Court **GRANTS IN PART** Defendant GoDaddy.com, LLC's *Motion to Dismiss* (Docket No. 15) and **ORDERS** Plaintiff Jason Nash to arbitrate his claims against GoDaddy.com, LLC pursuant to the terms of the UTOS. This action is **STAYED PENDING ARBITRATION** as all claims made herein must proceed to arbitration. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of October 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge